Good morning to the panel. My name is... Hang on just a second. So we've received a motion to submit an amicus brief from Ms. Miss Atencio. Are you in the courtroom? That's you. Okay. We were not clear as to whether you were requesting as well permission to argue, but we are not going to permit that. I apologize if you came expecting to, but we will accept the brief for filing. We're just not going to permit that. All right. Counsel for the appellants, repellent, whenever you're ready. Good morning to the panel. My name is Barbara Lyons. I am with Lafayette and Kumagai, and I represent Conduent State and Local Solutions, Inc., formerly known as Xerox State and Local Solutions, Inc. I understand that the panel has, and I would like to reserve three or four minutes at the end, I understand that everyone on the panel is extensively experienced with CAFA appellate decisions. So let me open by asking whether there are immediate questions I can address to make the best use of your time this morning. I think you're on your own. All right. What is the worst thing that the district court did here? Oh, the worst thing that it did? The worst thing that it did was it completely dropped the ball on the second half of the governmental entity exclusion from CAFA jurisdiction. It did not consider in any way sovereign immunity. So the legislative history of the statute, which may be moot in light of Lapidus, reflects a concern that entities otherwise possessing sovereign immunity would remove and then play the I'm immune game and stop this, stop the litigation. That doesn't apply for Conduent. It's a private entity. It has no claim for sovereign immunity, and if it had a claim for sovereign immunity, there would have been an absolute waiver by the affirmative removal to federal court. So that's the worst part of it. There's simply no basis for concern that Conduent has any claim of immunity, either at the outset or post-removal. The second issue that the court got wrong was its application of state act or case law to the governmental entity analysis, because the governmental entity is defined by reference to its form. And at the point that Congress enacted CAFA, it was fully aware of all of the 1983 precedents and the state act or analyses, and had it chosen to, it could have borrowed the acting under color of state law language from 42 U.S.C. 1983, and it didn't do so. It instead said governmental entity. Now, there was a little ball drop there in that it that defines it with reference to forms of entity. The a eustem generous principle, where they first talk about the state, state agencies, and other governmental entities, implies that what they are intending is for it to be examined under the prism of whether this entity qualifies as something that is due process purposes, its conduct is attributable to the state. So that's the nutshell. I don't have much to expand on on my brief. I don't know whether you intend to entertain argument this morning on the local controversy exception. The point there, the key point there is that Kelly was a very clearly was grounded on the same alleged wrongs as conduit as as Kendrick and Kelly, except that the Kendrick and Kelly complaint drops out most of the federal allegations. So it's, you know, it creates a state law cause of action, or it records, it pleads state law causes of action, but it does so with respect to an enormous class and in connection with which the the amount in controversy so clearly exceeds five million dollars that it's difficult to see how one could argue that it, in good faith, that the plaintiffs meant something else. And there that is, you know, you look at the Ibarra decision, you look at the complaint, and this complaint says hundreds of thousands, if not millions, of class members. It claims a right to attorneys fees on multiple causes of action. Those are included in the amount in controversy. For the core personally identifiable information claim, the base damage award would be $2,500. So you'd only need 2,000 class members to get past the threshold. And I say that because Ms. Kelly alleges multiple violations. So we have multiple instances of violations. We have a class of the masses. We have, we have injunctive relief costs to be considered. We have, and all of this is pled in the complaint, and we have the rights to attorneys fees. So they're simply, and for the consumer, consumer CFRA, excuse me, the CFRA claim, there is an additional claim that elderly and the disabled would have another $5,000 each. So when you put all of this together of multiple alleged violations over time, disclosures to multiple unauthorized entities, there simply is no way to credibly read the complaint as having been pled as a $5 million or less damages class. Maybe we should hear from your opponent and then give you a chance to respond. Thank you. Okay. Good morning, Your Honor. Paul Hoffman for the plaintiffs. I'd like to address the state actor issue and also the local controversy issue. And I have two points to make on the state actor issue. One is that the district court, in our view, was correct in finding that Conduit essentially was performing public functions and was completely intertwined with state entities that made it a state actor for the purposes of 5DA. Was, counsel, excuse me, was there any evidence at all in the record that Conduit had any discretion in what they were doing? I think the way that that was handled, Your Honor, was that, first of all, that it's their burden under Serrano. What the district court found was under this court's decision in Serrano was their burden. They claimed that they lacked discretion, but there was no evidence that they lacked discretion. And the one declaration that was filed did not really address that point. It addressed the numbers of vehicles that went through the tolls, but it didn't deal with whether they had discretion. And in fact, I mean, on the face of it, they are functioning by doing things like imposing violations for violations of tolls and collecting and doing the things that governments do. And so the court, in our view, at least, the court was well within its discretion to find that they had not met their burden and that they were functioning as a government entity for the purposes of 5DA. And that pretty much ends the issue, right? There's conceded the first, well, it ends the issue in terms of their state actors. There's another part of it, right? Well, I think that... I want to hear more of what you have to say on that, because I don't see how you get around the second part of that provision. Well, let me... I know you have something, right? I now have a higher bar than maybe I thought going in. In our view, 5DA is a categorical normative provision. In other words, it's not about whether a particular defendant waives or not. It's about whether they are a state actor that could, that may assert 11th Amendment immunity. And they may not, for a number of reasons. Well, they may not. But once they are a state actor who might, they can't use CAFA. They can't here. And we know that both from Lapides, right? Well, but Lapides, if the court remembers, Lapides was decided in 2002. CAFA was promulgated in 2005. So it clearly can't because they had drafted the statute before the decision and just didn't bother to update it. That's obviously what happened, right? We know what the provision was designed to stop, and it was to stop gamesmanship on the part of state actors. Well, but there's gamesmanship here. No. Because Conduit is removing the entire case where there are two state entities who may assert 11th Amendment immunity, which will screw up things in exactly the way that Congress didn't want them screwed up. And so what Congress said in the legislative history makes clear, in our view, is that if you are within this category, you can't use CAFA. That a case that involves state entities, particularly something like this, where you have a statute that's purely state law, hasn't been interpreted very much, if at all, by state judges, this is exactly the kind of case that Congress wanted to be in state court. Well, then it would have said if a primary defendant is a state act, but it said the primary defendants, all of them, must be in the position of the state court. Well, no, it didn't say all. It didn't say all. Well, it says the primary defendants, plural. So if your client is, I'm sorry, not your client, if Conduit, your opponent here, is a primary defendant, which I think you have to concede it is. Well, we haven't challenged it in the appeal, so we accept that. So then, obviously, the statute does, whatever Congress's thought process was, it does cover that. I think it's less obvious than that, in the sense that that is certainly the way two sister circuits have viewed it, in the Fifth Circuit and the Tenth Circuit, in the Wood case and the Fraser case, which is the one that's cited. But neither of those cases took into account 1 U.S.C. Section 1, which says that when you're interpreting a congressional statute, the plural includes the singular. And so if Congress really had made it clear, it would have said all or a. What it said is the. The defendants, which is plural, which includes the singular, which, based on the legislative intent, means that if there is a primary defendant that is a state entity that could assert Eleventh Amendment immunity, then the case can't be removed under CAFA. That is our position. And this circuit hasn't decided that. Judge Alsop, in a case shortly after CAFA, decided that it only had to be one primary defendant and remanded. That didn't come up to the court. And I would suggest that Fraser and Wood are wrongly decided. And Wood, and neither of those cases involves an entity as entwined with the enforcement of state law within the statutory scheme as this defendant is. And so if you're trying to avoid gamesmanship, you would affirm the district court, because this is gamesmanship. They file an amicus brief. You'll notice in that amicus brief they don't say, oh, we're waiving too, or they don't make any statement about whether they're entitled to Eleventh Amendment immunity. And why didn't they join? They were they had a joint opposition in the district court. They don't do anything with respect to a removal. They have the alleged private entity that's completely entwined with them and is enforcing state law do the removal so they can make this argument here. Our suggestion is that if a primary target of the case and all the other things are met, then they don't have advantage over CAFA. And maybe I should, I don't know. That's our position. And I think that if you use this, the principles of statutory construction, the reason why Congress put this in place, the fact that they had Lapidus in front of them. I think that when you say that they just made a mistake, I don't think that's the way legislative interpretation should go, right? You should make that they put it in three years after Lapidus. They knew about waiver, right? And so there's no, why would they put in a provision that would automatically be satisfied? Why wouldn't, I mean, if conduit here wants to be left as the only man standing, right? In terms of who you're able to collect against and they want to remove. Why wouldn't Congress say, well, you're a primary defendant. You want to be the only one that can be, that players can recover from filing? But that's not what's going to happen because then the case will get refiled in state court or it'll get remanded. The state entities will get remanded back and we'll be in the mess that Congress didn't want to have. Having two separate class actions, one in federal court, one in state court against the state entities, where they're all responsible. We don't know what the indemnity agreements are. That never came out. I mean, the point is we've got a state court that has the ability to interpret state law. And you have the primary targets of this being the state. That is who the target is. There's no question about that. It is true that conduit is a primary defendant based on the fact that they're also a target. But two of the three main defendants and the main defendant, it's the state that's going to pay this. Right? That's the issue, right? And so I think that if you look at it that way, I think the circuit should address the question of whether it's only one that's required. Let me ask you this. Conduit is a contractor essentially, isn't it? Well, that's. Or is it? Well, you see, I think that there was dispute about that in the district court. They tried to claim that they were a contractor, which goes to Judge Ezra's question about discretion. Right? They said, well, we don't have discretion. We just do what they tell us to do. But there's no evidence of that. And they're entwined in the day-to-day functioning of the state system that includes not just collecting tolls. It includes violating people, making sure that people don't get to have their car registration because they're taking action about that. Are they manning the booths? Well, I actually don't know who personally is manning the booth. I assume that it's their employees that are. Well, actually, the way that it works on the Golden Gate. I'm not sure how this works. I'm from Los Angeles, so, you know, I don't go through the Golden Gate Bridge much. But my understanding is you get something in the. Right. So there's nobody manning or womanning the toll booth. But they operate the. They operate the system. They operate the system and have since 2013. But pursuant to a statutory scheme, which enables them to perform public functions. If I could switch. Let me ask you this. No, please. We have a lot of cases in which they're private operators of prisons. And under 1983, our law, I think, is that they are State actors. And they can be sued. The State can be responsible. So are those cases of any relevance here? I don't know the cases well enough, Your Honor, to be able to answer your question. I'm sorry. I mean, I could. And actually, I was going to ask whether we would have permission. I was wondering why they weren't briefed at all. I was wondering if we could have permission to respond to the amicus brief. Sure. If we've accepted it, yes. You can file a short response. But let me ask you just one more question. So why doesn't the statute say a primary defendant as opposed to. If your reading were correct, why wouldn't Congress have just said a primary defendant  I don't have an answer to that. I mean, I also don't know the answer to why it doesn't say all. I mean, that's. Basically, the interpretations by the Tenth and Fifth Circuit are this means all, right? But it doesn't say all. It says the primary defendants, which, under the rules of statutory interpretation that Congress operates under, means the singular as well as the plural. So we don't know the answer to that. And I think that what we're suggesting is that a primary defendant, or that interpretation of singular in addition to plural, effectuates the congressional purpose better than what the defendant's argument does, which creates the very problem, or can create the very problem that Congress seems to have legislated to avoid. Remind me, is there a definition of primary defendant elsewhere in CAFA? I don't believe so, actually. I think this Court in Challien discussed what a primary defendant is and said that it's one of the entities or defendants that is primarily responsible for, you know, for paying up, basically. And so we haven't challenged what the district court did on that. I just think your reading doesn't make sense to me, because what — but tell me if you've envisioned a different congressional intent. What Congress didn't want to have happen is to have the case removed and then the plaintiffs have to go forward, and they basically can only recover pennies from the lone defendant who's there and is subject to having a judgment. But that could happen under this. What if Congrant goes bankrupt? What if Congrant goes bankrupt and the main defendants here have a cert 11th Amendment immunity in Federal court after removal? That's exactly the problem. And instead, they're in State court where they don't have that immunity, where they should be, where the State court can interpret the law, which is exactly what Congress thought, right? Congress — the reason for this is that they wanted to exempt those kind of cases which are from the old structure of CAFA more local. Why isn't it appropriate for State entities or those entwined with them to have their cases heard in State court rather than Federal court? I mean, it just makes sense, right? On that — from the standpoint of what they were trying to accomplish. And actually, this is a little segue to the local controversy issue, which is — which turns on this question of whether the prior case should be viewed as something falling within the exclusion or should really be viewed as the same case. And our argument on that is that Bridewell disposes of the idea that a technical — that that technical fact is dispositive completely. And in fact, with the local controversy provision, to go back to what Congress was intending, was to avoid a situation where there were multiple lawsuits and they wanted to make sure that the Federal procedures for multidistrict litigation and for coordination of class actions would be available. There's no issue here. This is the same case. I mean, it's really the same — it's not exactly the same as Bridewell because it wasn't consolidated, but it was dismissed and then refiled. There's no issue about multiple litigation. This is the litigation. And so under the principle of Bridewell, I think that the fact that there had been basically a false start and then a restart should not be held against it because all the other criteria are here. This, again, for the same reasons I argued about the first part of this, this is exactly the kind of case that should be in a State court. It's one case. It's dealing with a new statute. It's dealing with something that affects Californians. It's not about something that's nationwide or even regional. Roberts. Your argument on this point depends on the unique circumstances under which your client's — the earlier class action was dismissed. Is that correct? Well, it — I mean, I'm just — you're obviously asking for an exception, a carve-out from the plain language of the statute, and I'm just wondering what are the contours of that? Well, I mean, I think — Given that your client — one of your clients has a very unique circumstance. It's a slight extension of Bridewell, if you view it that way. I mean, in Bridewell, there were two cases. And technically, the second one came within this exception. And then they were consolidated. So if you were taking a hyper-technical view of the statute, yeah, they couldn't — they couldn't get the local controversy exception. And what this Court said is, well, no, that's not true. They're consolidated. It's one case. It's not all these cases. And what we're suggesting is the fact that these two were not — they were in a sense consolidated by — Spelled out. But they were refiled. That's all. So just give me the rule, then, that covers your client's case, but that is also generally applicable. I think that the rule is that if basically what you're talking about is the same case being dismissed and then refiled, it's no different than Bridewell. If there are other cases by other counsel and other plaintiffs, even one other case by other counsel and plaintiffs, I think it clearly falls within.  Same counsel has to be involved? I don't think — I don't think that the same counsel matters as much as the same person. But, I mean, essentially this is the same case, right? I mean, that's — that's what — that's what we — that's how we see it, right? It was filed. There was a problem with her health. It was dismissed without prejudice, and then it was refiled. And that's — basically we would suggest under Bridewell, given the reasons for the exception, that there's no reason not to extend Bridewell this tiny, tiny little bit so that the local controversy exception is — applies. Okay. Thank you very much. Thank you. We will hear from your opponent, who wisely reserved her — the balance of her time to respond to all those points that you just heard. I will leave it to you, Your Honor. Thank you. Let's start with Bridewell, because Bridewell was a consolidation case. The cases became one case. This is a relating case. There was no possibility of consolidation by that point because Kelly had been dismissed. And they are not the same case because Kelly had Federal causes of action. So if we're talking about a sleight of hand here, what we're asking for — what's being asked for appears to be to take a case that was clearly a Federal question case, call it a State case, and send them both down to State court. And I don't see the rationale in that. On the plain language of the statute, I believe that Congress understands the distinction between plural and singular, and that if Congress wanted to say a primary defendant or one or more primary defendants, it could have said so in the governmental entity exclusion. Instead, it said the defendants. There is a second error in the way Appellee's counsel has characterized BATA and GGB. BATA and GGB are local districts. They are not the State. So the analysis of State sovereign immunity is more attenuated, and they have not taken a position that they have sovereign immunity. I will leave their brief alone, but I do note that there is a question of whether by joining in an opposition to motion to remand, there was a similar kind of waiver as an affirmative removal to Federal court. They haven't addressed that, and I won't speak to that because of that. But it does seem as if the same principle governs, that if an entity indicates that it wants a case in Federal court, it means it wants the case to go through the Federal judicial process. This really is not a local controversy either. The several bridges in the Bay Area, you being from Southern California, are predominantly covering or traversing interstate highways. So you have the Golden Gate Bridge that comes down Interstate 101. You have the Carkinus Bridge and the Bay Bridge that go along Interstate 80. You have the Benicia Martinez Bridge going down Interstate 680. These are major interstate thoroughfares. So the notion that tolling collection of data is a local matter really isn't an accurate way to examine it. Judge Schroeder. I understand that. Okay. It's just that it's all within, you know, in the broader view of interstate commerce, everything is, nothing is local. In this instance in particular, and you have motorists from all over the country able to use and using, and there is an interstate system for collection. If you get an out-of-state tag, you write away to the other state and you get the information and you try to collect. So it's not confined to California. On the immunity issue, there is a very clear delineation between public and private entities. And the cases we cited for you in our supplemental letter, Del Campo, and then the Xerox case, South Peninsula Hospital v. Xerox, Richardson v. McKnight, Wyatt v. Kohl are all on point for the proposition that you don't have immunity. Wyatt v. Kohl, 504 U.S. 158, 168 to 169, 2011. Qualified immunity is not available for private defendants faced with 1983 liability for invoking a state replevin garnishment or attachment statute. There is also an overemphasis on intertwinement here, because the liabilities under the PII statute are several. They are all independently obliged not to release PII, and therefore if they do release PII, it's not a question of whether there's an agent immunity or whether it's done at another defendant's behest. It is did they violate the statute. So the entwinement issue is not really one that I'm sold on. And then the contract issue isn't one that we had to plead, because they admitted and alleged it in their complaint that there is a contract between the two, and they laid out in their complaint the delineation of conduits, then Xerox's responsibilities under the contract. So, and I'm not really convinced in any event that you look to entwinement. You look to, it would be more Rendell Baker, are they conducting a state function? And in this instance, they're really the back office. They aren't the people who are deciding, they are not empowered under the statute allowing contracting for this purpose to decide what they're going to do in the way of setting fees. That is, it remains the tolling agency's responsibility, BATAs or GGBs. For them, they are, for a conduit, it's simply a processing agency, again, the back office function. And in the analogous Xerox case, the court said that doesn't get you there. Numerous plaintiff's cases also address this issue of not having the sovereign immunity. If you're private, I need to pick something up. Those cases include Ballard, Dennis v. Sparks, Howerton, Jensen, and Rendell Baker. So we aren't talking about an 11th Amendment immunity issue here, certainly not for conduit, and most likely not for BATA or the Golden Gate Bridge transportation authority either.
judges: Schroeder, Watford, Ezra